UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| TRAZIL GAINES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:24-cv-00125-SNLJ |
| | ) | |
| DART TRANSIT COMPANY, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on plaintiff's Motion to Compel [Doc. 85]. For the reasons set forth below, the motion is granted.

**I. BACKGROUND**

This lawsuit arises from a motor vehicle crash in which plaintiff's vehicle was struck by two commercial motor vehicles [Docs. 1, 52]. Plaintiff's operative complaint pleads negligence claims against the defendants [Doc. 52]. She alleges, among other things, that defendants Carreon and Violanti were driving negligently at an excessive speed and failed to maintain a safe following distance. Plaintiff also alleges that defendants Paschall Truck Lines and Dart Transit Company were directly negligent, including by failing to provide appropriate training and instruction related to driving in adverse weather.

On June 4, 2026, plaintiff filed a motion to compel defendant Paschall Truck Lines (PTL) to fully respond to plaintiff's First Requests for Production (RFP) 10, 14, and 32 [Doc. 85]. With respect to RFP 14, plaintiff seeks production of all dashcam video in

PTL's possession, custody, or control for the day of the crash [Doc. 85, ¶¶ 7, 8]. PTL had produced 56 seconds of footage, but PTL's corporate representative testified that PTL stored "three to four minutes" of footage [*Id.* at ¶ 7]. With respect to RFPs 14 and 32, plaintiff seeks driver-behavior analytics data for defendant Carreon [*Id.* at ¶ 10]. With respect to RFP 10, plaintiff seeks driver training material including "electronic or online training materials and quizzes (made available by Paschall through a platform called Luma)" and the "Paschall Fineline Handbook" [*Id.* at ¶¶ 12, 13].

On July 2, 2026, plaintiff filed a supplement to the motion to compel notifying the Court that PTL had served a supplemental response stating that it no longer has defendant Carreon's Luma driver training data [Doc. 86]. Plaintiff requested production of a "fair equivalent." [*Id.*]. Plaintiff suggested PTL identify a driver with the company who underwent the same Luma training modules as defendant Carreon during the relevant time period and produce that information with the name redacted. [*Id.*].

On July 16, 2026, PTL filed a response in opposition [Doc. 87]. PTL stated it had complied with plaintiff's request for additional information by confirming the Luma data was no longer accessible, producing the PTL Fineline Handbook, and producing additional driver logs for Carreon [*Id.* at p. 4]. PTL objected to the request for a "fair equivalent" of driver training data, arguing that it would not be easy, that it would cost time and money when one of plaintiff's experts did "not even take issue with PTL's training method," and that it may be speculative as to what training Carreon received [*Id.* at pp. 4-5]. Although PTL stated it "had produced all dash camera footage in its

possession" in its supplemental production [Doc. 86-1], it did not address this issue in its response to the motion to compel.

On July 27, 2026, plaintiff replied in support of her motion to compel [Doc. 88]. She argues PTL should be compelled to produce relevant dashcam video from its dashcam provider, Lytx, because PTL has the practical ability to obtain video from Lytx. Similarly, plaintiff also argues that PTL must request Carreon's driver training materials or a "fair equivalent" from Luma to satisfy its discovery obligations.

## II. LEGAL STANDARD

A party may move for an order compelling production from another party when that party fails to produce documents requested under Federal Rule of Civil Procedure 34. *See* Fed. R. Civ. P. 37(a)(3)(B)(iv). "The rules for depositions and discovery are to be accorded a broad and liberal treatment." *Credit Lyonnais, S.A. v. SGC Int'l, Inc.*, 160 F.3d 428, 430 (8th Cir. 1998) (cleaned up). "A district court has very wide discretion in handling pretrial discovery." *Hill v. Southwestern Energy Co.*, 858 F.3d 481, 484 (8th Cir. 2017).

Under Federal Rule of Civil Procedure 34, "a party may serve on any other party a request within the scope of Rule 26(b): (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the [documents and electronically stored information] in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a). The scope of discovery is set forth in Rule 26, which provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the

> parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Rule 26(b)(1).

## III. DISCUSSION

Condensed, the standard is that defendant PLT must produce each of the contested items if it is (1) within the scope of discovery per Rule 23 and (2) within defendant PLT's control per Rule 34. Rule 34(a) requires a party to produce not only those documents within its possession or physical custody, but also responsive documents that are within the party's control. *Wells v. FedEx Ground Package Sys., Inc.*, 4:10-cv-02080-JAR, 2012 WL 4513860, at *1 (E.D. Mo. Oct. 1, 2012). Control is defined broadly as the "ability to obtain upon demand documents in the possession of another." *Id.* The party to whom the discovery is directed need not have legal ownership or actual physical possession, but rather a "practical ability" to obtain the documents. *Id.*

Each of the contested items is discussed below.

### A. A longer segment of dashcam video from Lytx

A longer segment of dashcam video is within the scope of discovery. It is relevant, as it could make the driver's negligence more or less likely. Furthermore, PTL has not claimed that it is privileged. Finally, it is proportional to the needs of the case, especially given its modest additional length.

A longer segment of dashcam video is also within PTL's control per Rule 34. Defendant PTL has the "right, authority, or practical ability, to obtain" the footage from

Lytx because of their ongoing business relationship. *See* Rule 34. With such a relationship, PTL should just be able to request the footage from Lytx. The rule of control clearly applies here given PTL's knowledge of Lytx and its ability to request from Lytx more easily than plaintiff due to the ongoing relationship. The Court is persuaded by plaintiff's point that litigation this is one reason why a motor carrier like PTL would arrange for dashcam services like those of Lytx in the first place.

**B. Carreon's Luma data from Luma – Alternative 1**

Carreon's Luma data is within the scope of discovery. It is relevant, as it makes it more or less likely that Carreon was adequately trained. Furthermore, PTL has not claimed that it is privileged. Finally, it is proportional to the needs of the case, since it constitutes part of the training the adequacy of which is at issue; since a request will likely not take much time or effort; and since it may be the case that the imprudent practice of "purging" data when a driver leaves belongs to PTL instead of Luma.

Carreon's Luma data, though in Luma's possession, is within PTL's control. While not stated in the briefings, presumably Luma is another company with which PTL has an ongoing business relationship. Insofar as this is the case, defendant has the "practical ability" to obtain the data by requesting it. The rule of control clearly applies here given PTL's knowledge of Luma and its ability to request from Luma more easily than plaintiff.

**C. Equivalent Luma data – Alternative 2**

The Luma data of an equivalent driver is also within the scope of discovery. It is relevant in that it makes it more or less likely that Carreon was adequately trained. If the

driver chosen was a Paschall driver at the same time as Carreon, then the driver would be far from "random." Instead, it would be likely that Carreon received the same training as that driver received and did not receive the training that driver did not receive. Again, PTL has not claimed that it is privileged. It is proportional to the needs of the case, since PTL may be able to pull it online without formally contacting Luma, and since the imprudent practice of "purging" data when a driver leaves may belong to PTL instead of Luma.

The Luma data of an equivalent driver is within PTL's control per Rule 34. Luma is an online platform through which PTL can practically obtain this data. The rule of control clearly applies here given PTL's knowledge of Luma and its ability to access Luma more easily than plaintiff.

PTL denies the "ease" with which this equivalent data could be "located, procured, and produced" [Doc 87, p. 4]. However, it does not specifically identify a difficulty. Presumably all that needs to be done is for someone at PTL to read its records and determine who was a Paschall driver at the same time as Carreon, and then to pull that driver's Luma data by going online. If concurrently employed drivers do not receive the same trainings on the same timeline, then this Court gives PTL the option of requesting Carreon's Luma data from Luma (Alternative 1).

PTL also argues it should not be prejudiced in spending time and money to identify an equivalent driver when "when Plaintiff's industry standards expert Mr. Grill does not even take issue with PTL's training methods" [Doc. 87, pp. 4-5]. Defendant provides a snippet of Mr. Gill's deposition testimony to this effect. However, it does not

matter whether plaintiff's expert takes issue with PTL's training methods; plaintiff does. Plaintiff's expert speaks at the request of plaintiff, not in plaintiff's stead. *See Foulger v. Avertest, LLC,* No. 4:22-CV-00878, 2025 WL 3538973, at *5 (E.D. Mo. Aug. 27, 2025) ("an expert witness" is not "authorized to make an admission for [a] party") (internal citation omitted). Additionally, even if such data does not make a tremendous difference in plaintiff's case, it does not seem to the Court a tremendous burden for PTL to identify a driver with equivalent training, especially since PTL has not raised any particular difficulty. And if there would be particular difficulty nevertheless, then PTL can opt for Alternative 1.

PTL argues that such a production of another driver's data may constitute speculation as to the exact Luma training Carreon received [Doc. 87, 5]. It seems to the Court that only PTL and defendant Carreon could know whether such data will reflect the exact training Carreon received. Given this information asymmetry, if PTL produces another driver's data, it shall be presumed to be nearly equivalent, so that defendant cannot select remote data and then benefit from the remoteness. Finally, the Court will again remind PTL that if it is truly concerned about any inexactitude, that it may request the exact Carreon data from Luma (Alternative 1).

Finally, the Court declines to order payment of reasonable expenses because PTL largely complied with discovery requests, making such an award unjust under Rule 37(a)(5)(iii).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to compel [Doc. 85] is **GRANTED**. Specifically, PTL shall produce within 14 days:

1) All relevant dashcam video including dashcam video that can be obtained from Lytx.
2) Defendant Carreon's driver training materials from the Luma platform that can be obtained from Luma.
3) If defendant Carreon's data is not available from Luma, then PTL shall identify a driver with the company who underwent the same Luma training modules as defendant Carreon during the relevant time period and produce that information with the name redacted.

**SO ORDERED** this 14th day of September, 2026.

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE